## Case No. 15,347a.

### UNITED STATES ex rel. CASTRO v. HENDRICKS.

[2 Hayw. & H. 293.][1]

Circuit Court, District of Columbia. June 10, 1858.[2]

MANDAMUS TO LAND COMMISSIONER—ISSUANCE OF PATENT—DUTIES OF COMMISSIONER.

1. A mandamus will not lie to compel the commissioner of the general land office to issue a patent to the petitioner for more land than, in the judgment of the commissioner. he was entitled to, the quantity of land to which petitioner was entitled being a question to be determined by the commissioner upon all the evidence and facts.

2. The decision of the commissioner of the general land office ordering a further examination. on the ground that the return of a survey made by the surveyor general of California represented the tract as containing more than the quantity sold and confirmed was a proper exercise of the duties of his office.

[This was a petition by Salvador Castro for a writ of mandamus, to be directed to Thomas A. Hendricks, commissioner of the general land office, and to require him to issue a patent for certain land in California.]

[1] [Reported by John A. Hayward. Esq.. and George C. Hazleton. Esq.]

[2] [Affirmed in 23 How. (64 U. S.) 438.]

R. J. Dent and Hyatt P. Hepburn, for petitioner.

Mr. Kerr, for commissioner.

The petitioner states in his petition that he claimed title to a part of a tract of land granted by the government of Mexico to one Antonio Buelna; that to confirm his title he filed his claim before a board of land commissioners established by an act of congress of March 3, 1851 [9 Stat. 631]; that for the want of sufficient evidence it was rejected by the said commissioners, but upon an appeal taken to the district court of the United States for the Northern district of California, the necessary evidence was supplied, and the said court, by its final decree, confirmed the claim to the tract of land described in the survey made by the surveyor general of California by metes and bounds; that the commissioner of the general land office refuses to issue a patent for said land; that the petitioner is greatly prejudiced and hindered in his just rights and legal title; that the proceedings on the part of the commissioner of the general land office are illegal and without warrant of law, and in violation of the plain ministerial duty imposed on him; that the decree of the district court and the survey of the surveyor general are final and conclusive upon the ministerial officers of the government.

The following is the communication sent to the secretary of the interior, by the commissioner of the general land office, a copy of which was given to the petitioner. It contains the facts in the case:

"In the case of the eastern portion of the 'San Gregerio' ranch, confirmed to Salvador Castro, being for 'one league,' this office prepared instructions to the surveyor general of California, ordering a further examination, upon the ground that the return of survey made by that officer represented the eastern portion as containing an excess of two and one-half leagues over the quantity sold and confirmed. From that proceeding the counsel for Castro took an appeal, followed by a communication dated the 13th of March. 1858. from the secretary of the interior. approving our proposed action in the premises. Subsequently H. P. Hepburn. Esq., attorney. asked, for reasons stated. a rehearing. This application having been referred from the department on the 26th. I have the honor to return herewith Mr. Hepburn's application. the printed argument presented by him and the Hon. Robert J. Dent, counsel, and in addition to the views presented in our instructions of February 3, 1858. respectfully submit the following: It is not disputed that the district court has authority to fix boundaries as well as to confirm titles. but it is contended that the court has no power to enlarge or go beyond the limits of the original grant. and that its proper function is to execute the contract entered into in this case by the Mexican authorities. and nothing more. The

original grant to Buelna contained four square leagues. The plats returned for that grant, viz: for the claim of Castro the eastern portion, and that for Rodrigues the western, embrace six and one-half square leagues, an excess of two and one-half leagues over the said Buelna grant, thus awarding, as we think, that quantity of the public lands of the United States as an excess to said grant. We do not in the proposed proceeding resist the decree, but assert that in making the survey under it the surveyor has erred in taking a wrong initial point, and we suggest a further examination to find the proper initial point at another locality along the mountains, that by so doing the survey would be made to harmonize with the original grant, with the diseno, and at the same time conform to the decree. We have alleged no error in the decree, and our object is properly to determine its effect and construction. Had the estimate been twice the quantity we should not of course go outside of established well defined boundaries to make up the quantity where the original grant and decree affirmed those boundaries, but if the confirmee could show that his quantity was cut short by such an error of the surveyor, as we think has occurred in this Castro case, by taking a wrong starting point, and it appeared that by taking a point suggested the terms of the decree would be complied with, and he would get his full quantity named therein, we should certainly direct a re-examination of the survey to do full justice to the claimants. There is no rule for preferring quantity to boundaries, where the original grant and confirmation both fix the boundaries as the controlling data, just the reverse of this assumption in any case of that class would obtain. But where, as is a matter of universal notoriety, the general mode of distributing public lands in California restricts the grant to quantity, 'a little more or less' on account of the rude and defective system of fixing limits, in the absence of a surveying system in that country, either under the dominion of Spain or Mexico the quantity for the most obvious reason became the governing rule, and to obtain generally in the original grants and decrees of confirmation. Wherever quantity and limits can be reconciled with the original grant and confirmation, it is of course our duty to have it done. It is not contended by this office that the confirmation extended beyond the grant, but that the error is with the surveyor in locating the claim. The decree recites that this is 'a portion of the four league grant' to Buelna, and that it is the 'same land described in the conveyance to claimant filed,' &c. This is part of the decree, the whole of which, with the grant itself, must be examined and satisfied in locating the tract. It is maintained that all the general land office has to do is to see that there is a final confirmation and a location of that confirmation. We agree with this with the understanding

that we shall be satisfied the location is a lawful and proper one, but, if satisfied that it is neither lawful nor proper, will it be maintained that we should convey such a location into patent, upon the ground that it is merely a ministerial act? In a case analogous in principle, in the language of the learned Attorney General Wirt,—Bates' Case (Oct. 10, 1825) 2 Op. Attys. Gen. 15,—upon an assumption like this, 'the president, whose peculiar constitutional function it is to see that the laws are properly enacted, is himself to become instrumental in a conscious breach of the laws, by signing the patent, because an inferior officer has ignorantly or inadvertently taken a false step.' It is now proposed to review the Castro survey, on the ground that it is outside of the original grant, or at least that portion of it has been so located, and the government thus deprived of the excess above mentioned. If it is ascertained that in locating both the Castro and Rodrigues within the grant, there is not found the quantity of four leagues, the loss in damages must fall upon Rodrigues, as the deed to Castro referred to in the decree carries one league, and is a relinquishment, to that extent in favor of Castro, the boundaries fixing the locus of the claim to that extent within the original grant. This office looks to the reorganization act of July 4, 1836 [5 Stat. 107], for its authority of 'supervision and control' (see case of Bernard v. Ashley, 18 How. [59 U. S.] 45, and Bell v. Hearon, 19 How. [60 U. S.] 262), in this matter, and understands the attorney general's opinion of September 29, 1857,—Case of Citizens of Butte Co. (Cal.) 9 Op. Attys. Gen. 108, —according to its plain terms and import to wit: 'A person who claims land in California under a title from Mexico is entitled to have a patent for it issued out of the general land office here, whenever he shows that his claim has been finally confirmed by the commissioners, by the district court or the supreme court, if he at the same time accompanies that proof with a survey certified and approved by the surveyor general of California.' That is, he is to have a patent for his 'Mexican' claim, not for something not included in but outside of that claim. In view therefore of the whole matter, and after careful consideration of the whole argument of the counsel of Castro, this office feels constrained to adhere to the views presented in the proposed instructions."

Answer of the commissioner of the general land office to the rule of the court, to show cause why mandamus should not issue for the execution and delivery of a patent.

"The undersigned is bound by law to perform the duties of his office under the direction of the secretary of the interior and the president of the United States, so far therefore as the proceeding may be intended to control him in the discharge of his official function, by substituting the direction and control of others for that of the secretary or

president, he protests against it as unauthorized and illegal. Protesting that your honors have no authority to control his official action as prayed, nor to make him as commissioner of the general land office, and through him the executive of the government of the United States, a party to this proceeding, or to require him to make answer therein, in discharge of the rule of the court he says: That on the 2d day of May, in the year 1839, a grant of land was made by Alverado, the governor of the department of California, pursuant to Mexican laws and regulations, to Antonio Buelna of four square leagues, a little more or less, situate on the north side of the establishment of Santa Cruz, &c. That after the death of said Buelna, to wit: on the 29th of January, 1849, Madam Rodrigues (widow of Buelna) and her husband Francisco Rodrigues, with a view to the payment of the debts of the said Buelna, and in consideration of $500, made a deed to the petitioner (Castro) for one league of the said land, describing the same as 'one league of land in the location known by the name of San Gregoria, situated on the coast to the north of Santa Cruz, and which land consisted of four leagues, was the property of Antonio Buelna,' &c. It appears that it was afterwards considered necessary for Rodrigues and his wife to execute another deed for the same land 'for more definite boundaries,' which they did bearing date August, 1852. It does not appear, nor is it believed that the said last deed was given for any new or additional consideration, nor with a view to an enlargement of the grant to the petitioner. It is shown that it was made without any new consideration, and for the one league of land mentioned in the first deed. Three leagues of the land granted to Buelna were retained by Madam Rodrigues, widow of Buelna, and the same has been confirmed to and surveyed for her, giving her that quantity.

"It is true that the proceedings were had relative to the claim of the petitioner before the board of land commissioners in California, and before the district court of the United States for the Northern district of California, and the confirmation was made in favor of the petitioner, as stated by him in his petition and in the said decree of confirmation. But it is not admitted, nor is it believed to be true, that it was intended by the said confirmation, or that the said confirmation had the effect to give to the petitioner any lands outside of the proper limits of the Buelna grant, or to give to the petitioner a greater quantity of the lands of the said grant than was contemplated by the parties in the execution of the said deeds. It is further true that after said confirmation a survey was made on behalf of the petitioner, under the authority of the surveyor general of California, and by him approved and returned to the general land office. But it is not admitted, nor is it believed to be true, that

the said survey was a correct survey of the lands of the petitioner as described in said decree of confirmation. On the contrary thereof, the undersigned believes the same to be an incorrect survey, and that it exceeds in quantity the real claim of the petitioner by nearly two and one-half leagues, and that a proper survey thereof may and ought to be made according to the description of the lands in said deeds and in said decree of confirmation, so as to give the petitioner all the lands to which he is entitled, and at the same time not to pass the proper limits of the Buelna grant, and include lands of the United States, nor to any portion of the three leagues reserved by Madam Rodrigues. It is true that after said survey was reported to the general land office, the undersigned did carefully examine the same in connection with the grant to Buelna, the two deeds and the decree of confirmation, and did come to the opinion that the said survey was not a true and correct survey of the land of the petitioner, nor in accordance with the said grant, deeds and confirmation; but the same through fraud or gross mistake and inattention had been made so as to include nearly two and one-half leagues of land that did not belong to the petitioner, and that would not fall within the lines of the claim if properly run, and the same did include nearly two and one-half leagues of land of the United States, and being satisfied that according to law and good conscience he ought not to cause the same to be carried into patent without further and thorough investigation, the undersigned did on the 3d day of February, 1858, cause to be prepared, and did sign, with a view to transmission, instructions to the surveyor general, to the effect that he should cause a further and careful examination to be made in the whole matter, and report the result, with his decision as to the true boundaries of the league confirmed to Castro and the three leagues to Madam Rodrigues. It is true that the petitioner did appeal from the action and decision to the secretary of the interior, and that the secretary after fully considering the subject did overrule said appeal and affirm the decision of the general land office and did confirm the instructions aforesaid, and that afterwards the undersigned did refuse to cause to be issued to the petitioner a patent, upon said erroneous and defective survey, and did so inform the petitioner through his attorney, and he does still refuse to issue any patent upon said survey, as he believes it to be his duty in law to do. It is not disputed that the district court had authority to fix the boundaries as well as to confirm, the title to this claim, but it is insisted by the undersigned that by the act of 3d of March, 1851, no authority was conferred upon the board of commissioners, or upon the court to enlarge and nearly double the real claim, in other words to give away of the public lands of the United States a quantity of land nearly equal

to two and one-half leagues greater than was contained in the original Mexican grant, as is virtually claimed shall be done in this case, neither the treaty, the laws of nations, nor the legislation of congress contemplate such a thing. Nor does the undersigned concede that the court intended to, or did, by its decree, enlarge the Buelna claim from four to six and one-half leagues, or the claim of the petitioner from one to three and one-half leagues, and upon no legal principle can such a construction to that decree be given, on the contrary thereof he does insist that a correct and proper survey in accordance with the terms of the decree of confirmation will give to the petitioner about one league of land, and Madam Rodrigues three leagues, all within the proper limits of the Buelna grant, with a view to such a result the instructions of 3d February, 1858, were prepared.

"The undersigned does insist: (1) That the honorable court has no authority of law to direct him in the discharge of any of his duties as commissioner of the general land office, and therefore cannot issue the writ prayed by the petitioner. (2) That by the first section of the act of July 4, 1836, 'to reorganize the general land office,' the undersigned is required to discharge the duties of his office 'under the direction of the president of the United States,' and that if under the circumstances of the case it is his duty to cause the patent sought by the petitioner to be issued, then the remedy of the petitioner is to obtain from the president the order therefor, and therefore he has a direct and sufficient remedy, without the intervention of this court, and the writ prayed ought not to issue. (3) That by the section of the law above mentioned the survey of the public lands, and also of 'private claims of lands' are made, 'subject to the supervision and control of the commissioner of the general land office, under the direction of the president of the United States,' which supervision and control are not taken away by the act of March 3, 1851, and therefore when the survey of the claim of the petitioner was reported to the general land office, it was the duty of the undersigned thoroughly to examine the same, and if he should find it correctly made in accordance with the grant and decree, then to approve it, but if he found the same to be erroneous and through fraud or mistake to have been incorrectly made, then it became his duty to reject or suspend the same, or to give such orders for its correction as the facts and the law should require, subject of course to the president of the United States, and over the judgment of the undersigned in such a case this honorable court could exercise no control. (4) That the survey upon which the petitioner seeks a patent, through fraud, negligence or mistake was not correctly made, but is erroneous and includes nearly two leagues and one-half of land as aforesaid, to which the petitioner is not entitled, and therefore the

court ought not to issue any writ requiring the issue of a patent thereon.

"The undersigned prays to be discharged from further answer either to the petition of the petitioner or the order of the court.

"Thos. A. Hendricks, Commissioner.

"General Land Office, May 20, 1858."

Decree discharging rule.

This cause being set for hearing upon the petition, answer and exhibits and agreement filed, and the arguments of counsel being heard as well on behalf of the petitioner as the respondent, and the premises being fully considered: Therefore it is this 10th of June, 1858, by the said circuit court ordered, adjudged and directed that the cause shown by the respondent why the writ of mandamus should not be ordered as prayed is sufficient in the premises, and that the petition of the relator be and the same is hereby dismissed with costs.

[NOTE. The case was taken on an appeal to the supreme court, where the decree of this court was affirmed, with costs. 23 How. (64 U. S.) 438.]